THE ATTORNEY GENERAL
OF TEXAS
ATTORNEY GENERAL



*overrules*

*M-199     C-449*
*WW-146l    C 485*
*M-249     C 782*

August 29, 1972

Honorable Robert S. Calvert     Opinion No. M- 1199
Comptroller of Public Accounts
State Finance Building          Re:  Validity of riders in the
Austin, Texas    78711               1971 General Appropriations
                                     Act, (Acts of 62nd Leg.,
                                     R.S. 1971, Chap. 1047, pages
Dear Mr. Calvert:                    3421, et seq.).

You have requested our opinion on the validity of 45 riders in the current 1971 General Appropriations Act which are quoted in separate paragraphs as you have numbered them with our opinion following the verbatim quotation of the rider.

Certain general principles of constitutional law are applicable to the validity of such riders. These principles may be summarized as follows:

An appropriation bill may detail, limit or restrict the use of funds therein appropriated or otherwise insure that the appropriated money will be spent for the purpose intended. Moore v. Sheppared, 144 Tex. 537, 192 S.W.2d 559 (1946); Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899); Attorney General's Opinions O-445 (1939), V-1253 (1951), V-1254 (1951), 2959 (1935), V-1196 (1951).

A rider attached to the general appropriation bill cannot repeal, modify or amend an existing general law. State v. Steele, 57 Tex. 203 (1882); Linden v. Finley, supra; Moore v. Sheppard, supra; Attorney General's Opinions 1745 (1917), 2787 (1929), 2965 (1935), 2970 (1935), O-445 (1939), O-1837 (1940), O-2573 (1940), O-5329 (1943), V-412 (1947), V-894 (1949), V-1196 (1951), V-1254 (1951), M-1141 (1972).

If a bill does more than set aside a sum of money, provide the means of its distribution, and to whom it shall be distributed, then it is a general law. Attorney General's Opinions 2965 (1935), V-1254 (1951); Moore v. Sheppard, supra. The distinction between a general appropriation bill and general legislation has been recognized in this State in the

simple fact that the former merely sets apart sums of money for specific objectives and uses while the latter does more than merely appropriate and limit the use of funds.  General legislation constitutes a separate subject and cannot be included within a general appropriation bill.  Moore v. Sheppard, supra; Attorney General's Opinions 2965 (1935), V-1254 (1951), V-1253 (1951), WW-294 (1957), WW-310 (1957), M-280A (1968).

The veto power of the Governor is a Legislative and not an Executive or Judicial function, hence the Governor has only such power as the Constitution confers upon him and he may not disapprove of certain paragraphs or portions of a bill and approve the remainder.  Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911); Attorney General's Opinions V-1196 (1951), M-1141 (1972).  The Governor has the power to veto only items of an appropriation  bill.  The Governor has no authority to veto a rider in an appropriation bill unless it is in itself an item of appropriation.  Fulmore v. Lane, supra; Attorney General's Opinion V-1196 (1951).

The only authority of the Governor to exercise a substantive veto power over  legislation or items of appropriation is clearly set out in Article IV, Section 14, of the Constitution of Texas.  Where the Constitution has spoken and preempted this matter, the Legislature is without power either to add to or detract from this constitutional function.  In exercising that veto power, the Governor is exercising a Legislative and not an Executive or Judicial function.  He has only such power as the Constitution confers upon him; he cannot disapprove of certain portions of a bill which are not items of appropriation, and approve the remainder.  Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911); Annotation, 35 A.L.R. 600, and cited cases; 16 C.J.S. 617, Const. Law. Sec. 138, n. 81; 81 C.J.S. 1220, States, Sec. 164, n. 55; and Attorney General's Opinion V-1196 (1951).

Aside from the constitutional substantive veto power of the Governor granted in Article IV, Section 14, Texas Constitution, there is no other authority provided for him to have a continuing veto power over expenditure of appropriated funds. Any attempt by the Legislature to delegate to the Governor the power to exercise a continuing veto over such expenditures and at his own discretion would constitute an attempt to increase the Governor's veto power.  Furthermore, if the Legislature attempted to grant such power by a rider in an appropriation bill, such rider would amount to general legislation

in violation of Article III, Section 35, Texas Constitution, under the authorities cited above.

In Attorney General's Opinion M-1141 (1972), we concluded that in view of the authorities cited therein, a rider requiring approval of the Governor as a prerequisite to the expenditure of moneys appropriated therein was invalid. See also Attorney General Opinion No. M-280 (1968).

Applying all of the foregoing principles of constitutional law to the attached riders, you are advised that it is our opinion the riders are valid or invalid according to the comments following the language being construed:

1. Page II-43 Section 2, Subsection e, for Special Provisions, which reads, "Salary rates in excess of the minimum amounts specified in Senate Bill No. 116, as amended, and the salaries of coaches and teachers of exceptional children, may be paid with the advance written approval of the Governor; but such approved rates shall never exceed the rates of pay for like positions paid in the public schools of the City in which the State School or Home is located."

That portion requiring written approval of the Governor is invalid, but the remainder of the provision is valid. In support of the valid portions, see WW-229 and WW-282.

2. Page III-11 for the Air Control Board which reads, "None of the funds appropriated to or that are available for use by the Air Control Board may be expended by the Board for legal services of any type until the Attorney General has approved the position and person to fill the position. The Comptroller of Public Accounts shall make payment for such service only after written approval has been received from the Attorney General."

This rider is invalid because it is an attempt to enact general legislation in an appropriation bill. Opinions WW-1461 and M-249 are overruled where such opinions are in conflict herewith.

3.  Page III-16 for Alcoholic Beverage Com-
    mission which reads, "None of the funds
    appropriated hereinabove to the Texas
    Alcoholic Beverage Commission shall be
    expended for building rentals without
    the written approval of the Governor."

This rider is invalid.  M-1141.  The provisions of
Article 666b, Vernon's Civil Statutes, apply and Board of
Control approval is necessary without this rider since it
is pre-existing general law.

4.  Page III-51 for the Department of Cor-
    rections which reads, "It is further pro-
    vided that none of the building appropri-
    ations made hereinabove shall be expended
    unless and until such time as the Depart-
    ment of Corrections shall have filed with
    the Governor and the Legislative Budget
    Board an orderly plan for meeting long
    range construction needs of the Department;
    and such funds shall be expended only upon
    approval of the Governor; provided, however,
    that copies of such requests for the Gov-
    ernor's approval, and notice of the Gov-
    ernor's action on such requests, shall be
    filed with the Legislative Budget Board."

This rider is valid as to informational filing, but is in-
valid as to approval by the Governor since it gives the chief
executive a second veto power.  M-1141 and M-280.

5.  Page III-51 for the Department of Cor-
    rections which reads, "Any unexpended
    balances remaining in projects under the
    respective items for Building Appropriations
    may, with the approval of the Governor, be
    transferred and used for the purposes of
    completing construction of other projects
    enumerated in the same item; provided, how-
    ever, that copies of such requests for the
    Governor's approval, and notice of the Gov-
    ernor's action on such requests, shall be
    filed with the Legislative Budget Board."

That portion of the rider requiring the Governor's approval is invalid; such approval cannot be required, but that portion requiring filing of information with Budget Board is valid.  M-1141 and V-1254.  The agency Board must vote the transfer of funds.

6.   Page III-53 for the Department of Corrections which reads, "The Department of Corrections is authorized to expend funds from the Mineral Lease Fund during the biennium beginning September 1, 1971, to acquire, by negotiation or condemnation, parcels of land solely within the perimeters of the Coffield Unit.  Such expenditures, however, cannot be expended without the approval of the Governor.  Notice of the Governor's action in such requests, shall be filed with the Legislative Budget Board."

That portion of the rider requiring the Governor's approval is invalid; such approval cannot be required, but that portion requiring the filing of information with Budget Board is valid.  M-1141 and V-1254.  The agency Board must vote the transfer of funds.  The old language of this item required approval of the Legislative Budget Board for expenditures.  In Opinion V-1254 (1951) we held this violates the separation of powers (V-1254, pages 13-15).

7.   Page III-53 for the Department of Corrections which reads, "Any unexpended balances as of August 31, 1971, for the Department of Corrections in the general appropriations made by the Sixty-first Legislature, Second Called Session (House Bill No. 2) for the Center for Continuing Education in Corrections (Item No. 24, Page III-55) are hereby reappropriated to the Department of Corrections for the same purposes for the biennium beginning September 1, 1971.  Provided, however, that such reappropriated funds shall be expended only upon approval of the Governor and that copies of such requests for the Governor's approval and notice of the Governor's actions on such requests shall be filed with the Legislative Budget Board."

That portion of the rider requiring the Governor's approval is invalid; such approval cannot be required, but that portion requiring the filing of information with Budget Board can be required. M-1141 and V-1254. The agency Board must vote the transfer of funds. The old language of this item required approval of the Legislative Budget Board for expenditures. In Opinion V-1254 (1951) we held this violates the separation of powers (V-1254, pages 13-15).

8. Page III-54 for the Board of Dental Examiners which reads, "Expenditures of operating appropriations made hereinabove to the Board of Dental Examiners shall be contingent upon said Board filing with the Comptroller by not later than the first day of each fiscal year covered by this Act, a list of all applicants for licenses to practice dentistry in this State and of all persons actually granted such licenses for the preceding twelve-month period, and the basis (whether by reciprocity, by clinical examination only, or by clinical and theoretical examination) upon which such licenses were granted."

This rider is valid and is a simple condition which the Legislature has the power to impose in an appropriation act.

9. Page III-77 for the Highway Department which reads "The Highway Department is authorized to rent or lease equipment of any kind except office machines and electronic computers. Office machines will be rented or leased with prior approval of the State Board of Control. Electronic computers will be rented or leased only with the approval of the Governor. This specific authorization shall be construed to be an exception to any prohibitions and restrictions in the General Provisions of this Act.

This rider is valid as to Board of Control approval. Article 666b. This rider is invalid as to requiring Governor's approval, since such approval is not supported by general law and is a subject which should be covered by the general law. Further, we think Article 6252-12a is the current general law on this subject and gives the State Auditor duties in this respect.

-5857-

10.  Page III-77 for the Highway Department which
     reads, "None of the funds appropriated to
     the State Highway Department may be expended
     for the construction of any District Office
     Building at a cost exceeding Sixteen Dollars
     ($16) per square foot in construction costs,
     including engineering and architectural fees,
     and no building, regardless of type, contain-
     ing more than ten thousand (10,000) square
     feet may be constructed without prior ap-
     proval of the Governor."

This rider is invalid.  M-1141.

11.  Page III-98 for the Library and Historical
     Commission which reads, "Federal grants made
     to or received in Federal Public Library Fund
     No. 118 are hereby appropriated for the pur-
     poses for which such grants may be made; pro-
     vided, however, that none of such moneys may
     be expended for personal services without
     the advance, written approval of the Governor.
     Such authorized classified positions shall
     be governed by the provisions of this Act re-
     lating to the Position Classification Plan."

This rider is invalid.  Article 6252-11, the Position Clas-
sification Act of 1961, governs this area.  See also M-1141.
WW-117 allows travel to be paid from this type of Federal
funding.

12.  Page III-112 for the Parks and Wildlife De-
     partment which reads, "Any Federal grants,
     allocations or aids for the conservation and
     improvement of game, fish and wildlife, or
     for improving, developing and planning pub-
     lic parks, or for any other program or acti-
     vity under the statutory authority of the
     Parks and Wildlife Department, may be ac-
     cepted and disbursed through the State Trea-
     sury by said Department for the purposes
     for which they were granted and are hereby
     appropriated for such purposes; provided,
     however, that expenditure of any such Fed-
     eral grants, allocations, or aids shall not
     exceed the amounts shown in the schedule of

> appropriations hereinabove, or for pur-
> poses and programs not authorized by said
> schedule of appropriations; and shall have
> the prior written approval of the Governor."

That portion of the rider requiring the Governor's ap-
proval is invalid.  While Opinion M-266 concerns this fund,
no question was there raised as to the validity of requiring
prior approval by the Governor.  We further hold that Ar-
ticle 4050d, V.C.S. is the general law pertaining to this
subject and it does not authorize any Governor's approval.

13.   Page III-113 for the Parks and Wildlife De-
      partment which reads, "None of the funds ap-
      propriated above may be expended for the
      purchase or rental of additional electronic
      data processing equipment without the prior
      written approval of the Governor."

We hold this rider invalid because Article 6252a, Vernon's
Civil Statutes, is a general law on this subject and this law
gives powers to the State Auditor; also invalid per M-280,
and M-1141.

14.   Page III-113 for the Parks and Wildlife De-
      partment which reads, "None of the moneys
      appropriated hereinabove by the item, 'State
      Comprehensive Outdoor Recreation Plan - for
      updating Texas' comprehensive outdoor recre-
      ation plan,' may be expended without the
      prior, written approval of the Governor, on
      a budget which describes each character of
      personal services to be rendered, and none
      of the moneys in such appropriation item
      may be expended for reallocating to a higher
      salary group any position in the State's
      Position Classification Plan."

We hold this rider invalid insofar as the expenditure re-
quires the approval of the Governor, and without which the ex-
penditure may in effect be vetoed by the Governor.  Article
6081r, Vernon's Civil Statutes, is the general law and it
does not provide for Governor's approval;  also see Opinion
M-280.

15. Page III-113 for the Parks and Wildlife Department which reads, "None of the funds appropriated above may be expended on boats in excess of 20 feet in length without the prior written approval of the Governor; provided, that copies of such requests for the Governor's approval, and notice of the Governor's action on such requests, shall be filed with the Legislative Budget Board."

This rider is invalid insofar as it requires the Governor's approval, (M-280), but is valid as to that portion which requires the filing of information with the Legislative Budget Board. M-1141.

16. Page III-114 for the Parks and Wildlife Department which reads, "None of the funds appropriated above may be obligated for construction of buildings or residences each costing in excess of $5,000 without the prior written approval of the Governor."

This rider is invalid, M-280. Sec. 5, of Article 6081n, Vernon's Civil Statutes is a general law giving the power to spend funds to the agency.

17. Page III-115 for the Parks and Wildlife Department which reads, "The Parks and Wildlife Department is hereby authorized within the limitations of funds appropriated hereinabove for Exempt Positions and Salaries of Classified Positions, to establish new and/or reclassify existing salaried positions for the purpose of implementing all or parts of the Management Study completed on May 25, 1970. Provided, however, that any changes in classified positions made for this purpose, shall have the prior approval of both the Classification Officer and the Legislative Audit Committee, and that any changes in exempt positions made for this purpose, shall have the prior approval of the Governor."

This rider is invalid. Article 6252-11, Vernon's Civil Statutes, is a general law covering this matter.

18.  Page III-125 for the Texas Rehabilitation Commission which reads, "It is also provided that, in the event of expansions of Federal programs, additional Federal funds becoming available may be used to employ additional personnel necessary to carry out the expanded programs, but only with the advance approval of the Governor; provided, however, that copies of such requests for the Governor's approval, and notice of the Governor's action on such requests, shall be filed with the Legislative Budget Board."

The requirement for informational filing for budget reasons is valid, but the approval by the Governor is invalid. M-208 and 1141.

19.  Page III-133 for Department of Public Safety which reads, "The Department of Public Safety is authorized to own and operate six (6) airplanes and seven (7) helicopters only. None of the funds appropriated above shall be expended for the purchase of airplanes or helicopters without the specific approval of the Governor."

This rider is invalid.  M-280, M-280A, and M-1141.

20.  Page III-133 for Department of Public Safety which reads, "From the amounts appropriated out of the Operator's and Chauffeur's License Fund for the support and maintenance of the Department of Public Safety, an amount not to exceed One Hundred and Twenty Thousand Dollars ($120,000) for each year of the biennium beginning September 1, 1971, is hereby designated for the purchase of evidence and/or information and surveillance expenses deemed necessary by the Department of Public Safety; and accountability for expenditures as set forth above shall be governed by such rules and regulations as the Director of the Department of Public Safety may recommend, subject to approval by the State Auditor."

This rider is invalid to the extent that the approval of the State Auditor is required over the rules and regulations as to expenditures.  C-447 (1965).

21.   Page III-136 for Securities Board, which reads, "Emergency transfer of funds between Item 6, 'For salaries of classified positions, part-time and seasonal help, professional fees and services and witness fees,' and Item 7, 'Consumable supplies and materials, current and recurring operating expense (including travel) and capital outlay,' is authorized upon approval of the Governor."

This rider is invalid only to the extent that it provides for the Governor's approval as a condition.

22.   Page III-141 for Texas Mass Transportation Commission which reads, "None of the moneys appropriated above may be expended without the prior approval of the Governor."

This rider is invalid.  M-280, M-280A, and M-1141.

23.   Page III-149 for Water Development Board which reads, "Those funds allocated by the Water Development Board under the appropriation for topographic mapping, water studies and investigations shall be used for ground water, surface water, chemical quality investigations, sediment sampling studies, playa lake modification studies, studies of the Little Wichita River and other West Texas streams, and the operation of evaporation stations, to implement the Upper Sabine Study Contract and shall include statistical compilations and hydrological and other studies and investigations by the State, or in cooperation or by contract with other govermental agencies, institutions or non-governmental entities, and may include hourly wages and contract services.  Provided, however, that no such expenditures may be made without the prior written approval of the Governor on a

budget for expenditures which describes each character and object or purpose of obligations to be incurred."

This rider is invalid insofar as the Governor's approval is required.  M-280, M-280A, and M-1141.

24.  Page III-160 for Department of Public Welfare which reads, "In the event of disaster or other unforeseeable contingency, there is hereby appropriated out of the Commodity Distribution Fund No. 39, an additional amount not to exceed $30,000 for the payment of salaries and wages, travel and other operating expenses, provided that expenditure of this additional appropriation must be approved in advance by the Governor, and any position titles and rates of pay required shall be approved by the State Classification Officer."

This rider is invalid as an unauthorized delegation of power, and confers an unbridled discretion, without any standards or guidelines, upon the Governor.  The requirement of the Governor's approval is also invalid.

25.  Page III-165 Special Provisions Riders, which reads, "It is further provided that none of the moneys appropriated in this Article may be expended for the rental of warehouse space in Austin, Texas, for the purpose of storing records or documents without the prior approval of the State Director-Librarian."

Article 5435, 5441a, and 5441d, Vernon's Civil Statutes, contain the general law.  This rider is surplusage insofar as it states the general law, and is invalid to the extent that it may conflict therewith.

26.  Page III-165, Section 6, Subsection c, Special Provisions Riders, which reads, "Whenever the State Auditor determines that a Petty Cash Revolving Fund is desirable for

> a particular department or agency, the
> Comptroller of Public Accounts shall draw
> a warrant payable to a local bank on
> vouchers issued by the department or
> agency; provided, however, such initial
> vouchers must bear the approval of the
> State Auditor.  Thereafter, such petty
> cash revolving fund in the local bank may
> be expended by checks signed by a bonded
> employee of the department or agency de-
> signated by the head of the department or
> agency to administer such fund.  Disburse-
> ments from the petty cash revolving fund
> shall be reimbursed from appropriations made
> for the purposes for which the expenditure
> was made, and each expenditure from the
> petty cash revolving fund be supported by
> a cash disbursement voucher.  In the event
> of an abuse or unwarranted use of any petty
> cash revolving fund, the State Auditor
> shall advise the Comptroller of Public Ac-
> counts to call in immediately the re-
> sources of such funds."

This rider is invalid because it seeks to change the general laws on deposit of public moneys in the treasury without amending such statutes.

> 27.  Page IV-2 for Central Education Agency
> which reads, "The Texas Central Education
> Agency is authorized to employ personnel
> in Agency Administration only in the line-
> item positions listed above and in those
> positions listed in the 'Schedule of
> Classified Positions, Agency Administration,'
> below.  It is provided, however, that in
> the event of expansion of Federal programs
> or inauguration of new State-Federal prog-
> rams the State's responsibility for which
> lies with the Central Education Agency,
> additional positions in excess of the number
> limitations in the 'Schedule of Classified
> Positions, Agency Administration' may be
> utilized, but only with the advance approval
> of the Governor."

This rider is invalid to the extent that the Governor's approval is required, and the balance of the rider is valid.

28.  Page IV-13 for School for the Blind and School for the Deaf which reads, "However, such recommended salary rates in excess of the minimum amounts specified in said Senate Bill No. 116, as amended, and the salaries of coaches and teachers of exceptional children, may not be paid without the advance written approval of the Governor; but such approved rates shall never exceed the rates of pay for like positions paid in the Austin public schools."

This rider is invalid to the extent of requiring the Governor's approval, and the balance of the rider is valid.

29.  Page IV-26 for the University of Texas at Austin which reads, "None of the funds appropriated above to the University of Texas at Austin for the item 'Labor and Management Education and Research' may be expended until a committee is appointed by the President of the University of Texas at Austin to administer this program.  This committee shall be composed of persons who represent either management or labor and the representation on this committee shall be equal between labor and management leaders from the State. The appointment of these members shall be approved by the Governor.  The committee shall appoint a director who must be approved by both labor and management through their representatives on this committee."

This rider is invalid because it amounts to general legislation in the Appropriation Act.

30.  Page IV-72 for Texas State Technical Institute which reads, "None of the funds appropriated above to the Texas State Technical Institute may be expended without the prior approval of an annual operating budget by the Governor; provided, however, copies of such requests for the Governor's action thereon, shall be filed with the Legislative Budget Board."

This rider is invalid, C-447.

31.  Page IV-72 for Texas State Technical Institute which reads, "Any architectural fees paid from funds appropriated hereinabove shall have the prior written approval of the Governor."

This rider is invalid, M-280 and M-280-A.

32.  Page IV-73 for Texas State Technical Institute which reads, "None of the funds appropriated hereinabove to Texas State Technical Institute may be expended for maintenance and operation of any aircraft without the prior written approval of the Governor."

This rider is invalid.  See M-280, M-280A, and M-1141.

33.  Page IV-81, Section 37, Special Provisions Relating to State Agencies of Higher Education which reads, "PRESIDENTS' HOMES.  No funds appropriated by this Act may be used for the purpose of constructing a home for a president of any of the general academic teaching institutions named herein, without obtaining the approval of the Governor prior to obligating any funds for this purpose; provided, however, that copies of such requests for the Governor's approval, and notice of the Governor's action on such requests, shall be filed with the Legislative Budget Board."

This rider is invalid because it constitutes general legislation.  See M-280, 280-A, and M-1141.

34.  Page IV-81, Section 38, Special Provisions Relating to State Agencies of Higher Education which reads, "BUILDING CONSTRUCTION. Prior to the allocation, expenditure or encumbrance of any funds appropriated by this Act, including funds provided through Article VII, Sections 17 and 18, of the State Constitution, for individual building construction projects costing in excess of twenty-five thousand dollars ($25,000), other than

classroom library and laboratory building
projects, the planned expenditure of such
funds shall be approved by the Governor;
provided, however, that copies of such re-
quests for the Governor's approval, and
notice of the Governor's action on such re-
quests, shall be filed with the Legislative
Budget Board."

This rider is invalid insofar as the Governor's approval
is required.  While  the Legislature can require information
filing with the Governor and with the Legislative Budget
Board, the requirement of the Governor's approval is invalid.
See M-280, 280-A, and M-1141.

35.  Page IV-82, Section 43, Special Provisions
Relating to State Agencies of Higher Educa-
tion which reads, "SALARY REPORTING.  None
of the funds appropriated to institutions of
higher education by this Act shall be expended
for payment of salary to any person whose sala-
ry is being supplemented from other than ap-
propriated funds until a report showing the
amount of salary being paid from other sources
has been reported to the Secretary of State."

This rider is valid and is a simple condition which the
Legislature has the power to impose in an Appropriation Act.

36.  Page V-28 Salary Provisions which reads, "An
employee whose classified position is re-
allocated by this Act to a higher salary
group shall receive the step 1 rate in the
higher salary group or the rate which he would
have received had his classified position
not been reallocated, whichever rate is higher.
Provided, however, an employee whose classified
position is reallocated by this Act to a higher
salary group, may have his salary adjusted
not more than two steps higher than otherwise
provided by this section.  Such additional
adjustment shall be for the purpose of main-
taining desirable salary relationships among
employees in the affected positions, and shall
have the prior approval of the Legislative
Audit Committee."

This rider is invalid insofar as requiring approval of the Legislative Audit Committee. Article 6252-11 contains the general law on the subject of classified salary positions and to the extent that the rider is not in conflict therewith, it is otherwise valid.

37. Page V-42, Section 15, Subsection b., Travel Regulations, which reads, "Employees of the Governor's office and employees of other State agencies designated by the Governor to represent him at govermental meetings or conferences when held out of the State shall receive actual meal, lodging, and incidental expenses. State officials and employees who travel to represent the Governor at governmental meetings or conferences may be reimbursed for their expenses out of appropriations made to the agencies by which they are employed."

This rider is valid because it is a reasonable direction as to the use of appropriated funds.

38. Page V-43, Section 18, Subsection a., Travel Regulations, which reads, "PASSENGER VEHICLES. None of the moneys appropriated in this Act may be expended for the purchase, maintenance or operation of a passenger car or of airplanes designed for passenger transportation unless authority to do so is stated by the language of this Act. Where such authority is stated, the purchase of an airplane, or the repair of an airplane, the cost of which is in excess of five thousand dollars ($5,000), in any one fiscal year shall have the prior written approval of the Governor, and notice of such approval shall be filed with the Legislative Budget Board."

This rider is invalid only to the extent of the requirement of the Governor's approval. Opinion M-999 is overruled to that extent.

39. Page V-44, Section 21, Other Provisions, which reads, "REPORTING APPEARANCES BEFORE FEDERAL AND STATE AGENCIES. The Governor's office may require agencies of the State of Texas appearing before Federal agencies or agencies of other states to submit in writing to the Governor the purpose of such meetings and expression of the policies of the State agency concerning the subject matter of the meeting. After reviewing the policies, the Governor may require the State agency to conform to the policies of the State of Texas as outlined by the Governor and the Legislature before funds appropriated in this Act may be expended for necessary travel and other expenses connected with such appearances."

This rider is invalid because it is general legislation in a state appropriation bill.

40. Page V-46, Section 32, Other Provisions, which reads, "AUDITS. None of the appropriations herein made shall be used to employ any firm or person to audit the books of any department, board, commission, institution or State agency, this being the duty of the State Auditor; provided, however, that in any instances where the funds available to said State Auditor are not, in his judgment, sufficient for any requested or contemplated audit, the department head or heads having authority to disburse the appropriations herein made are hereby authorized to direct the State Comptroller to transfer from any appropriations to the appropriation herein made for the State Auditor the amount which in the judgment of the State Auditor is necessary for the purpose of making such audit."

This rider is a valid authorization in implementation of the general law and duty of the State Auditor.

41. Page V-47, Section 38, Other Provisions,
which reads, "TYPEWRITER, ADDING MACHINE
AND CALCULATOR REPAIRS.  Except for the
State Highway Department and State Health
Department which maintain their own type-
writer repair service, all other agencies of
the State with appropriations made in Ar-
ticle I, Article III, and the Coordinating
Board, Texas College and University System,
and the Central Offices of the Board of
Regents, State Senior Colleges in Article
IV of this Act and having either electric
or manual typewriters located in Austin,
shall have them repaired and maintained
by the Board of Control.  The Board of
Control shall purchase all necessary re-
pair parts and be reimbursed by the agencies
for only the repair parts used.  None of
the funds appropriated in Articles I and
III of this Act shall be expended for re-
pair or maintenance service on typewriters
located in Austin without the prior auth-
orization of the Board of Control.  The
Board of Control shall establish such rules
of procedure as will effect an orderly and
efficient program for repair and maintenance
of State-owned typewriters in Austin under
the control of agencies in Articles I and
III of this Act.

"All agencies of the State located within
the Capitol Complex Area shall have all state-
owned adding machines and calculators repaired
and maintained by the Board of Control.  The
Board of Control shall purchase all necessary
parts and be reimbursed by the agencies for
only the repair parts used.  None of the funds
appropriated for this purpose to State agencies
located within the Capitol Complex Area shall
be expended for repair and maintenance of
State-owned adding machines and calculators
without the prior authorization of the Board
of Control.  The State Board of Control shall
establish such rules of procedures as will
effect an orderly and efficient program for

repair and maintenance of State-owned adding machines and calculators in Austin under control of agencies located within the Capitol Complex Area.  State agencies located outside the Capitol Complex Area in Austin may utilize this adding machine and calculator repair service through interagency contract with the Board of Control."

This rider is invalid because it constitutes general legislation.  Article 664-3, Vernon's Civil Statutes contains the general law.

42.   Page V-48, Section 40, Other Provisions, which reads, "RENTED MACHINES AND EQUIPMENT.  None of the moneys appropriated in this Act shall be used for the rental of any equipment which exceeds a rental cost of $1,000 per year (except for data processing equipment) without having the prior written approval of the Governor.  Such approval shall be required before the request is processed by the Board of Control, and the State Comptroller or any local disbursing officer shall not issue warrants or checks in payment of equipment rentals without such prior approval.  None of the moneys appropriated by this Act shall be paid to any seller who delivers any used or rented equipment in fulfillment of an order for new equipment, even though said equipment has been used by the agency placing the order.

"It is further provided that none of the moneys appropriated by this Act may be expended for the purchase or rental of electronic tabulating or data processing equipment without the advance written approval of the Governor therefor.  It is the expressed intent of the Legislature that existing tabulating and data processing installations of the State Government shall be efficiently utilized through interagency agreements with State departments and agencies needing such services, prior to the expenditure of public

funds for separate and additional instal-
lations of such equipment.  Agencies re-
questing approval of the Governor for
purchase or rental of this type of equip-
ment shall file a detailed report outlining
steps taken to utilize existing equipment
and reasons why such utilization is not
feasible."

This rider is invalid because it constitutes general legis-
lation and also invalidly delegates to the Governor legislative
duties and authority.

43.  Pages V-51 and 52, Section 47, Other Provi-
sions, which reads, "ATTORNEYS.  From and
after September 1, 1971, should a vacancy
occur in any department or institution of
higher learning, not otherwise exempted, in
Articles III or IV of this Act in a position
which has as its primary function the prac-
tice of law and rendering of legal services
and counsel, said position shall be filled
only after having received the written ap-
proval of the Attorney General.

"None of the funds herein appropriated may
be expended for legal services until the
Attorney General has given prior written ap-
proval for the employment of such personnel
and the compensation to be paid.  This pro-
vision shall apply to all legal services ex-
cept those rendered by personnel who are
classified in the Position Classification
Plan.

"None of the funds appropriated in this Act
may be expended for classified positions
which function as hearings examiners unless
the person filling such position has been
licensed to practice law in the State of
Texas.  The Attorney General and State
Classification Officer shall cooperate in
carrying out the intent of this provision
and shall report any violation to the Comp-
troller of Public Accounts who shall with-
hold any payments for the position in ques-
tion until such violation has been corrected.

-5872--

> Provided, however, that this provision shall
> not apply to such classified positions filled
> before the effective date of this Act.
>
> "None of the funds appropriated in Articles
> II, III and IV of this Act, with the excep-
> tion of funds appropriated to the Secretary
> of State, may be used for the delivery of a
> written legal opinion unless a copy of such
> opinion is furnished the Attorney General.
>
> "None of the funds appropriated in Articles
> II, III and IV of this Act, with the excep-
> tion of funds appropriated to the State
> Library and for State-supported law schools,
> may be expended for purchase of law books
> without the approval of the Attorney General."

This rider is invalid because the subject matter involved
constitutes general legislation.  To the extent that this hold-
ing conflicts with prior opinions, the same are hereby over-
ruled to the extent of conflict.  Those include C-449 (1965);
C-485 (1965); C-782 (1966); M-249 (1968).

> 44.  Page V-55, Section 59, Other Provisions,
> which reads, "It is also provided that, in
> the event of expansions of Federal programs,
> additional Federal funds becoming available
> may be used to carry out the expanded prog-
> rams, but only with the advance approval of
> the Governor; provided, however, that copies
> of such requests for the Governor's approval,
> and notice of the Governor's action on such
> requests, shall be filed with the Legislative
> Budget Board."

This rider is invalid to the extent that it requires the
approval of the Governor.

> 45.  Page V-51, Section 45, Other Provisions,
> which reads, "BUILDING ALTERATIONS PROHIBITED.
> None of the funds appropriated in this Act
> may be expended for removing walls, partitions
> or any other permanent parts of the first and

> second State Office buildings, the Supreme
> Court building, the Archives and Inusrance
> buildings, and the Finance building, ex-
> cept for such renovations that may be neces-
> sary for new offices or departments moving
> into such buildngs, unless otherwise auth-
> orized and provided for elsewhere in this
> Act, or upon the approval of the State
> Board of Control."

This rider is invalid and constitutes general legislation. Article 665, Vernon's Civil Statutes, is the general law on this subject and provides authority for the Board of Control to repair buildings.

The above opinion concerning the various rider provisions of the appropriation bill about which our advice was requested intentionally expresses no view on whether the subject matter of the various riders might be validly enacted by some form of general legislation.

It is our opinion that those riders discussed above which attempt to provide for an approval and an informational filing with the Budget Board express two distinct legislative intents, and that the second intent is severable from the first; however, except where the item of appropriation is contingent upon the filing being made [for example, item 8 above, page 6] the language requiring the filing appears to us to be directory and not mandatory.

### S U M M A R Y

> Forty-five riders contained in the 1971
> General Appropriation Act are considered
> and passed upon as to validity.  See
> this Opinion for specific riders.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Roger Tyler
and John Reeves
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

J. C. Davis
Harriet Burke
Jack Sparks
Roland Allen

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant